PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| THEODORE W. ELENNISS, | ) | |
| | ) | CASE NO.  5:19CV0667 |
| Petitioner, | ) | (5:16CR0331) |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | [Resolving ECF No. 78] |

Pending is Petitioner Theodore W. Elenniss's Motion Under 28 U.S.C. § 2255 to Vacate,

Set Aside, or Correct Sentence (ECF No. 78).[1]  The Court has been advised, having read the file

and reviewed the applicable law.  For the reasons stated below, the Motion is denied.

### I. Background

After a jury trial in March 2017, Petitioner was convicted of maintaining a drug-involved

premises, 21 U.S.C. § 856, and being a felon in possession of firearms and ammunition, 18

U.S.C. § 922(g)(1).  In September 2017, the Court sentenced Petitioner to 84 months of

imprisonment on both counts to be followed by three years of supervised release.  *See* Judgment

in a Criminal Case (ECF No. 66); Transcript of Sentencing Proceedings (ECF No. 73).

Petitioner appealed the denial of his motion for leave to file a motion for a judgment of acquittal,

and, in the alternative, for a new trial.  In April 2018, the Court of Appeals for the Sixth Circuit

---

[1]  Unless otherwise indicated, the docket references will be to the criminal case,
not the related civil case, 5:19CV0667.

(5:19CV0667)

affirmed the district court's judgment.  *United States v. Elenniss*, 729 Fed.Appx. 422 (6th Cir. 2018) (ECF No. 74).

In March 2019, Petitioner filed the instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 78).  Elenniss accuses his trial counsel of the following: (1) failing to investigate and/or call witnesses whose testimony would have been helpful to the defense; (2) failing to determine Petitioner's whereabouts when the firearms were brought on the property; (3) failing to prepare Petitioner to testify; (4) failing to argue the constitutionality of the trash pull; (5) being ineffective in questioning Petitioner about his former conviction; (6) failing to present a viable defense; and, (7) failing to object to a constructive amendment or prejudicial variance.

## II.  Discussion

### A.    **Section 2255** Legal Standards

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either:  (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid."  *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks and citation omitted).  "In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims."  *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks and citation omitted).  "[N]o hearing is required[, however,] if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."

2

(5:19CV0667)

*Id.* (internal quotation marks and citation omitted).  A petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence.  *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Proceedings under § 2255 are not a substitute for direct appeal.  *Massaro v. United States*, 538 U.S. 500, 503-504 (2003).  Therefore, "the general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice" to excuse the procedural default.  *Id.* at 504.  A petitioner may also seek to overcome the default on the ground "that he is 'actually innocent' " of the crime of conviction.  *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

**B.    Evidentiary Hearing**

In *Amr v. United States*, 280 Fed.Appx. 480 (6th Cir. 2008), the Court of Appeals for the Sixth Circuit held that a prisoner was not entitled to a hearing on an ineffective assistance of counsel claim when the claim was conclusively refuted by the record.  *Id.* at 485-86.  "[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner.  In some cases, the judge's recollection of the events at issue may enable [her] summarily to dismiss a § 2255 motion. . . ."  *Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977).  The Court finds that the within motion may be resolved without an evidentiary hearing because the judge's recollection, files and records in this case conclusively show that Petitioner is not entitled to relief under § 2255.  *Ross v. United States*, 339 F.3d 483, 490 (6th Cir. 2003).

3

(5:19CV0667)

### C.     Ineffective Assistance of Trial Counsel

The Supreme Court has established a two-part test for determining whether an attorney rendered ineffective assistance.  *Strickland v. Washington*, 466 U.S. 668, 689 (1984).  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*. at 688.  "To establish prejudice, Petitioner must show a reasonable probability that, but for his attorney's errors, the proceedings would have produced a different result." *Ross v. United States*, 339 F.3d 483, 492 (6th Cir. 2003).  "When applying *Strickland*, if we can more easily dispose of an ineffective assistance claim based on lack of prejudice, we should follow that route." *Id*.

"Petitioners claiming ineffective assistance of counsel under *Strickland* have a heavy burden of proof." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).  The petitioner must demonstrate the constitutional violation because it is "presumed that the lawyer is competent." *United States v. Cronic*, 466 U.S. 648 (1984).  Here, Petitioner's arguments fail the *Strickland* test because he cannot show deficiency nor actual prejudice.

While trial counsel's tactical decisions are not completely immune from Sixth Amendment review, they must be particularly egregious before they will provide a basis for

(5:19CV0667)

relief.  *Martin v. Rose*, 744 F.2d 1245, 1250 (6th Cir. 1984).  Here, the facts show that

Petitioner's trial counsel was competent.

Petitioner also fails to meet the second prejudice prong of *Strickland*.  "[A]ctual

ineffectiveness claims alleging a deficiency in attorney performance are subject to a general

requirement that the defendant affirmatively prove prejudice."  *Strickland*, 466 U.S. at 693.

"Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular

case as they are to be prejudicial."  *Id*.  "Representation is an art, and an act or omission that is

unprofessional in one case may be sound or even brilliant in another.  Even if a defendant shows

that particular errors of counsel were unreasonable, therefore, the defendant must show that they

actually had an adverse effect on the defense."  *Id*.  In other words, "[t]he defendant must show

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."  *Id*. at 694.  "A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  *Id*.

In addition, the court must consider the cumulative effect of the alleged errors, since

"[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when

considered alone, may cumulatively produce a trial setting that is fundamentally unfair."  *United

States v. Hughes*, 505 F.3d 578, 597 (6th Cir. 2007) (quoting *Walker v. Engle*, 703 F.2d 959, 963

(6th Cir. 1983)).  Thus, examining an ineffective assistance of counsel claim requires the court to

consider "the combined effect of all acts of counsel found to be constitutionally deficient, in light

of the totality of the evidence in the case."  *Lundgren v. Mitchell*, 440 F.3d 754, 770 (6th Cir.

2006).

(5:19CV0667)

Here, Petitioner asserts that but for counsel's failures, Petitioner would not have been convicted, which satisfies *Strickland's* prejudice requirement.  *See* Petitioner's Reply (ECF No. 83) at PageID #: 1581 ("but for trial counsel's deficient performance, there would have been a reasonable probability sufficient to undermine the confidence in Elenniss' conviction").  This assertion is nonsensical, as it ignores the immense amount of evidence against Petitioner.

### 1.  Trial Counsel Effectively Called Witnesses

Petitioner claims that trial counsel failed to adequately investigate the facts of the case. "Under *Strickland*, 'counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' " *Stermer v. Warren*, 959 F.3d 704, 739 (6th Cir. 2020) (quoting *Strickland*, 466 U.S. at 691).  However, "a petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material." *Hutchison v. Bell*, 303 F.3d 720, 748-49 (6th Cir. 2002) (citing *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997); *Martin v. Mitchell*, 280 F.3d 594, 608 (6th Cir. 2002)).  While "[d]efense attorneys do not have an absolute duty to investigate," *Goldsby v. United States*, 152 Fed.Appx. 431, 435 (6th Cir. 2005), the failure to investigate and interview promising witnesses constitutes negligence, not trial strategy.  *See Workman v. Tate*, 957 F.2d 1339, 1345 (6th Cir. 1992).  "In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to counsel's perspective at the time investigative decisions are made, and by giving a heavy measure of deference to counsel's

(5:19CV0667)

judgments."  *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) (citations and internal quotation

marks omitted).

Petitioner also claims that trial counsel failed to call five witnesses to testify at his trial

whose testimony would have been helpful to the defense and/or who could have exculpated him.

He argues that trial counsel failed to present witnesses who could "directly contradict the

government's theory of the case."  Memorandum in Support (ECF No. 76) at PageID #: 1454.

Petitioner explains that his girlfriend, his houseguest, and three of his friends were prepared to

testify that they owned the guns found in the home and in the barn, as well as the syringes found

in the barn's loft.  Although trial counsel was informed that James Heaney, Daniel Klatic,

Genevea Woodsworth, and Donnie Wilson had been on the premises, neither Petitioner nor his

girlfriend, Yvonne Lasser, ever informed counsel that those four witnesses offered the potentially

exculpatory evidence claimed in the within motion.  *See* Affidavit of Russell S. Bensing (ECF

No. 81-2) at PageID #: 1562, ¶ 8.  Generally, an attorney's decision to call or not to call a witness

is considered one of strategy and not subject to review.  *Betts v. United States*, 4:17CR0044,

2022 WL 267583, at *2 (N.D. Ohio Jan. 28, 2022) (citing *United States v. Williams*, 106 F.3d

1362, 1367 (7th Cir. 1997)).  "The Constitution does not oblige counsel to present each and every

witness that is suggested to him."  *Williams*, 106 F.3d at 1367 (quoting *United States v. Balzano*,

916 F.2d 1273, 1294 (7th Cir. 1990)).  Failing to call a witness can constitute ineffective

assistance of counsel only when it deprives the defendant of a substantial defense.  *Chegwidden*

*v. Kapture*, 92 Fed.Appx. 309, 311 (6th Cir. 2003).  A trial counsel's tactical decisions are

particularly difficult to challenge when claiming ineffective assistance of counsel.  *See O'Hara v.*

(5:19CV0667)

*Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994).  Accordingly, Petitioner must overcome a

presumption that the challenged action might be considered sound trial strategy.  *Id.*

### a.    Testimony of Yvonne Lasser

The first witness Petitioner claims was not called to testify at trial was Yvonne Lasser.

However, a review of the record shows that Lasser did testify during the suppression hearing.

*See* Transcript of Suppression Hearing (ECF No. 57) at PageID #: 1202-1208.  Thus, the record

reflects that trial counsel knew of Lasser and any information she could offer, but chose not to

call her at trial.  As such, this decision must be seen as the kind of tactical decision to which a

reviewing court should defer.  *See Adams v. Jago*, 703 F.2d 978, 981 (6th Cir. 1983) (finding "a

defendant has not been denied effective assistance by erroneous tactical decisions, if, at the time,

the decisions would have seemed reasonable to the competent trial attorney")  (citations and

internal quotation marks omitted).

In addition, the tactical decision was wise because Lasser's proffered testimony is not

credible.  At trial, Petitioner testified on cross-examination that "[m]y fiancee has a prescription.

She is prescribed Xanax and Adderall, sir."  Transcript of Jury Trial Proceedings (ECF No. 52) at

PageID #: 935.  Lasser submitted an affidavit after the trial in which she stated, "[t]he alprazolam

and amphetamine salts were my legally prescribed medication."  Affidavit of Yvonne Lasser

(ECF No. 76-1 at PageID #: 1495, ¶ 6).  A review of the Ohio and Pennsylvania prescription

monitoring programs revealed, however, that there is no record of Lasser being prescribed those

medications in the last five years.  *See* Affidavit of Stephen G. Moluse (ECF No. 81-1).  Trial

counsel also attests:

8

(5:19CV0667)

> Yvonne Lasser testified at the motion to suppress hearing.  I did not ask [her] to
> testify at trial because, based on her performance at the hearing, I did not believe
> she was a credible witness. She obviously had a bias toward Mr. [Elenniss], as she
> was his girlfriend and was living with him at the time.  In her conversations with
> me, she changed her story about what had happened several times.  Moreover, on
> the day of trial, the Marshals found a syringe and a razor blade in her purse when
> she went through the security checkpoint.  Even if l had decided to call her as a
> witness before that, that incident would have given the AUSA ample room for
> impeachment, further degrading her credibility.

ECF No. 81-2 at PageID #: 1561-62, ¶ 7.  Lasser attests she did not possess a syringe while going

through the Court's metal detector, but admits the U.S. Marshals confiscated an orange syringe

cap as well as a box cutter.  Affidavit of Yvonne Lasser (ECF No. 83-1) at PageID #: 1583, ¶¶ 2-

3.  Since the challenged conduct of trial counsel "might be considered sound trial strategy,"

*Strickland*, 466 U.S. at 689, the claim raised by Petitioner in regard to Lasser sets forth "merely

speculative assertions."  *Bowen v. Foltz*, 763 F.2d 191, 194 (6th Cir. 1985).

### b.  Testimony of James Heaney

James Heaney's proffered testimony is also not credible.  Petitioner argues:  "Trial

counsel failed to investigate whether someone other than [Petitioner] possessed the rifle

recovered from the barn. . . .  Trial counsel could easily have discovered with due diligence that

one James Heaney witnessed Benjamin Elenniss holding the rifle *mere hours* before the search

[conducted on September 28, 2016].  The jury was never informed of this."  ECF No. 76 at

PageID #: 1457.  According to the Portage County Sheriff's Office, Benjamin Elenniss was in the

Portage County Jail from September 1, 2016 until he was transferred to Lorain Correctional

Institution on September 28, 2016.  *See* Portage County Jail Booking Records (ECF No. 81-3);

*see also* ECF No. 52 at PageID #: 907 ("Ben had been incarcerated a few weeks prior, I

9

(5:19CV0667)

would say approximately maybe three weeks before all this had happened.").  Heaney also

claimed it was he who placed the rifle in the barn loft to hide it from Benjamin Elenniss, but in

his affidavit submitted after the trial claims to have seen a police officer move the rifle from the

bottom floor of the barn to the loft.  *See* Affidavit of James Heaney (ECF No. 76-1 at PageID #:

1497, ¶ 4).  Even if trial counsel had known of Heaney and failed to investigate him, it did not

prejudice Petitioner not to call Heaney to testify at the trial.

### c.    Testimony of Daniel J. Klatik

Daniel J. Klatik, whom was present on the day the search warrant was executed,

submitted an affidavit almost two years after the event claiming that it was his loaded Hi- Point

Model C 9mm pistol and his loaded Mossberg 12- Gauge shotgun and ammunition that were

found in the basement of the house at 154 State Route 303, Streetsboro, Ohio.  *See* Affidavit of

Daniel J. Klatik (ECF No. 76-1 at PageID #: 1493, ¶ 3).  The Government argues that Klatik's

story, however, is not credible.  The Court finds it is unlikely that even if he had testified, the

jury would have found Klatik's testimony to be credible.  It is not believable that Klatik, whom

was allegedly brought onto the property to kill coyotes as he was in the business of doing so,

chose to place his loaded and unsecured shotgun in the rafters of a customer's basement, *see* ECF

No. 52 at PageID #: 775, his loaded and unsecured pistol in the bottom drawer of a customer's

desk, *see* ECF No. 52 at PageID #: 858-59, shotgun shells in the rafters, *see* ECF No. 52 at

PageID #: 858, shotgun shells in a box in yet another location in the basement, *see* ECF No. 52 at

PageID #: 840, mix his shotgun shells in a box with .22 caliber ammunition that did not belong

(5:19CV0667)

to either of "his" guns, *see* ECF No. 52 at PageID #: 841, and keep all of it within feet of

multiple marijuana plants, *see* ECF No. 52 at PageID #: 828.

### d.     Testimony of Genevea Woodworth

Petitioner also asserts he would have called a young woman, Genevea Woodsworth, to

testify that the gun in the bedroom was hers, had trial counsel not been ineffective.  Unlike

Lasser, Heaney, and Klatik, Woodsworth did not execute an affidavit in support of the within

motion.  Petitioner states that "Ms. Woodworth, who was staying on the property to get away

from an abusive partner, took [a firearm] for her protection without Ms. Lasser's knowledge.  As

[Petitioner] was in the hospital, Ms. Woodworth slept in his and Ms. Lasser's bed and kept the

firearm in Ms. Lasser's nightstand.  Interestingly, the jury never heard from Ms. Lasser or Ms.

Woodworth."  ECF No. 76 at PageID #: 1456.

This argument is problematic for a number of reasons.  While Petitioner argues and

Lasser attests, *see* ECF No. 76-1 at PageID #: 1495, ¶ 5 that Ms. Woodsworth had been on the

property the week of September 28, 2016, to escape an abusive romantic partner, Petitioner

testified during trial that Woodsworth had been residing in an upstairs bedroom "I would say

close to four months to six months."  ECF No. 52 at PageID #: 907; *see also* ECF No. 52 at

PageID #: 932.  Furthermore, while Petitioner and Lasser state that Woodsworth had been

sleeping in Petitioner's bedroom "during the week leading up to the search and Mr. Elenniss'

arrest," ECF No. 76-1 at PageID #: 1495, ¶ 5, Petitioner's medical records (ECF No. 76-1 at

PageID #: 1489) indicate that he was hospitalized from September 21, 2016 until September 23,

2016 – five days before his arrest.  Both Lasser and Petitioner testified that Elenniss was

11

(5:19CV0667)

bedridden immediately after being released from the hospital.  *See* Affidavit of Yvonne Lasser

(ECF No. 76-1 at PageID #: 1491); ECF No. 52 at PageID #: 910-11.  Petitioner testified on

direct examination that he was in the master bedroom when the police entered the home to

conduct the search.  ECF No. 52 at PageID #: 911.  When the police searched the bedroom, they

found Lasser's purse along with men's and women's clothing, indicating that Petitioner and

Lasser had been residing in the master bedroom since returning home on September 23, 2016.

*See* ECF No. 52 at PageID #: 771, 785-86.  Petitioner's recent accounting is belied by the record,

and Petitioner has failed to show any prejudice.  The Supreme Court has held that counsel is not

ineffective for failing to investigate if the additional evidence carries "serious risks" of

"expos[ing defendant's story] as an invention," *Harrington v. Richter*, 562 U.S. 86, 108 (2011).

### e.  Testimony of Donnie Wilson

Finally, Petitioner argues that trial counsel was ineffective for failing to call Donnie

Wilson to testify at his trial.  He asserts that Wilson would have testified that the syringes found

in the third-floor loft of the barn were his, used by Wilson to inject insulin to control his Type 1

diabetes.  *See* Affidavit of Donnie Wilson (ECF No. 76-1 at PageID #: 1499, ¶ 3-4).[2]  There is no

evidence in the record, however, that Wilson lived in the barn or on the property, making it a

non-credible claim that the syringes were Wilson's.  Such a claim would infer that Wilson

brought syringes to property on which he did not live to inject himself with insulin.

---

[2]  Affiant wrote "September 28, 2017."  This is a typographical error.   The search
was conducted on September 28, 2016.

(5:19CV0667)

Assuming, *arguendo*, that the syringes were Wilson's, it would be a non-issue as the barn was still a drug-involved premises given that Petitioner used it to grow marijuana. While at trial Petitioner claimed the marijuana grow belonged to his brother Benjamin, it has been proven that Benjamin Elenniss was incarcerated for almost four weeks before the raid. *See* ECF No. 81-3. It has also been established that Plaintiff had full control over the barn. *See* ECF No. 52 at PageID #: 924-25.

### 2. Petitioner's Whereabouts When the Firearms Were Brought Onto the Property Were Properly Established

Petitioner claims that trial counsel was ineffective for failing "to investigate Mr. Elenniss' absence from the premises and hospitalization just before the searches and arrest." ECF No. 76 at PageID #: 1454. As stated above, Petitioner's medical records (ECF No. 76-1 at PageID #: 1489) indicate that he was hospitalized until September 23, 2016 – five days before his arrest. Trial counsel was aware of the five-day period between when Petitioner returned home from the hospital and the execution of the search warrant. As such, it would have been a reasonable decision on the part of trial counsel to believe that Petitioner was present when the firearms were brought onto the property. "Whe[n] a defendant has given counsel reason to believe that further investigation would be futile or harmful, the defendant cannot later challenge counsel's decision not to further investigate." *United States v. Six*, 600 Fed.Appx. 346, 350 (6th Cir. 2015) (citing *Strickland*, 466 U.S. at 691).

In addition, this exact argument was reviewed on appeal by the Sixth Circuit in the case at bar. The Court of Appeals stated:

13

(5:19CV0667)

Elenniss challenges only one component of this charge—he claims that he did not "possess" any firearm. *See United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007). The government presented a theory of constructive possession (and, indeed, an instruction), which exists where a person "knowingly has the power and the intention at a given time to exercise dominion and control over [a firearm], either directly or through others." *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009) (emphasis omitted) (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)). And "[p]roof that the person has dominion over the premises where the firearm is located" may support a finding of constructive possession. *United States v. Hadley*, 431 F.3d 484, 516 (6th Cir. 2005) (quoting *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998)).

As noted above, Elenniss had dominion over both the residence and the barn, where numerous guns were found. . . .

*Elenniss*, 729 Fed.Appx. at 429-30.

### 3.      Trial Counsel Effectively Prepared Petitioner to Testify

Petitioner claims that trial counsel failed to prepare him, the only defense witness, for trial. On the contrary, trial counsel attests that he prepared Elenniss to testify before trial:

In my representation of Mr. Elenniss, my records show a two-hour office conference with him on January 3, 2017; a one-hour office conference with him on January 24, 2017; and two more two-hour office conferences with him, one on March 10, 2017, and another on March 24, 2017, the latter coming on the Friday before the Monday trial. The latter two conferences were specifically in preparation for trial. In addition, I discussed the case with him on the telephone on numerous occasions, and went out to the premises where the incident took place to view them and discuss that with him. This was a relatively simple case – his testimony took no more than an hour and a half, with cross-examination – and did not require more extensive preparation than I provided.

ECF No. 81-2 at PageID #: 1561, ¶ 6.

In *Amr*, the Sixth Circuit held the district court correctly denied an evidentiary hearing on a claim under § 2255 when the record consisted of the government's brief and a declaration from the movant's former counsel that contradicted the movant's claim, and the

14

(5:19CV0667)

movant had "not identified any evidence, other than his own testimony, that he could present to support his claim."  280 Fed.Appx. at 485 (footnote omitted); *see also Granderson v. United States*, No. 3:17-cv-00632, 2019 WL 2075889, at*7 (M.D. Tenn. May 9, 2019) ("Because the movant does not offer any facts to support his claim, the court credits [movant's former counsel]'s detailed testimony that he prepared the movant to testify before trial over the movant's conclusory assertion that he did not."); *Akins v. United States*, No. 1:08-cv-203, 1:04-cr-190, 2011 WL 122037, at *7 (E.D. Tenn. Jan. 14, 2011) ("A factually unsupported claim of failure to prepare a defendant . . . to testify is insufficient to state a constitutional violation.").

### 4.    Trial Counsel Properly Investigated and Challenged the Trash Pull

Petitioner claims that trial counsel failed to argue that the trash pull giving rise to the search warrants in the case at bar was an unconstitutional state action.  He argues:

> Trial counsel failed to investigate whether and how the police and Kimble Refuse Company effected a trash search from the dumpster on the property.  This is apparent from trial counsel's so-called challenge of the search warrant for the barn. . . .
> . . . In fact, trial counsel overlooked quite a reasonable theory:  that the trash pull was unconstitutional state action even though Kimble Trash Company, and not the police, actually removed the trash.
> While a person usually maintains no reasonable expectation of privacy in trash placed on the street for collection, *see generally California v. Greenwood*, 486 U.S. 35 (1988), there is a major difference between the typical trash pull and this one. . . .  The only relevant issue, which trial counsel should have presented instead of his bogus the-cops-did-it-themselves theory, was whether *Greenwood* created an exception to the warrant requirement for trash inside the curtilage of the home. . . .
> *   *   *
> This Court never had a true opportunity to decide whether the trash pull and warrants based on the results were constitutional. . . .

ECF No. 76 at PageID #: 1459-61.  These arguments fail for two reasons.

15

(5:19CV0667)

First, Petitioner's argument that the Court "never had a true opportunity to decide

whether the trash pull and warrants based on the results were constitutional" is lacking in merit.

In the Memorandum of Opinion and Order denying Petitioner's Motion to Suppress (ECF No.

19), the Court engaged in a lengthy analysis before concluding that the searches conducted in the

case at bar were permissible and done legally and within the bounds of the Fourth Amendment.

Specifically, the Court stated:

> Defendant first argues that the trash pull was conducted illegally.
> Defendant also argues that even if the trash pull were legal, it is not enough to
> establish probable cause.
>
> *   *   *
>
> In this case, the evidence demonstrates that the trash pull was conducted
> legally. . . .
>
> *   *   *
>
> Defendant's evidence is insufficient to show that Detective Graham
> entered the curtilage and removed the garbage from the dumpster.  If anything,
> Ms. Lasser's testimony confirms Detective Graham's story. . . .
>
> *   *   *
>
> Defendant further argues that, even if the search were constitutional,
> *United States v. Abernathy*, 843 F.3d 243 (6th Cir. 2016)[,] dictates that evidence
> from a trash pull is not, on its own, enough to support a finding of probable cause.
>
> *   *   *
>
> . . . This case is distinguishable from *Abernathy* because the trash pull, in
> this case, is one of several pieces of evidence supporting the warrant.  Defendant
> rejoins that this case is like *Abernathy* because none of the other pieces of
> evidence in the affidavit support probable cause, so the trash pull is left to stand
> on its own as the only piece of evidence that could support a warrant.
> Defendant's approach is contrary to the way in which courts review affidavits.
> *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004) (citing *United States
> v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001)) (instructing courts to look at the
> affidavit as a whole, rather than engaging in "line-by-line scrutiny").
>
> For these reasons, the Court finds that the trash pull, in combination with
> other evidence, supports a finding of probable cause.

ECF No. 19 at PageID #: 134-36.

16

(5:19CV0667)

Second, counsel presented a plausible defense theory he thought might prevail but did

not.  *See Hodge v. Haeberlin*, 579 F.3d 627, 642 (6th Cir. 2009) ("Where the defendant fails to

overcome the presumption that the challenged action 'might be considered sound trial strategy,'

we will not find ineffective assistance.") (citing *Strickland*, 466 U.S. at 689 (quoting *Michel v.*

*Louisiana*, 350 U.S. 91, 101 (1955))).

### 5. Counsel's Alleged Trial Errors

#### a. Trial Counsel Was Not Ineffective in Questioning Petitioner About His Former Conviction

Petitioner claims that trial counsel erred when he asked Elinniss during direct

examination about his prior felony drug conviction, *see* ECF No. 52 at PageID #: 908-909, when

he had already stipulated to the fact of his prior conviction.  In cases when the defendant

stipulates to his status as a felon for purposes of the charge of being a felon in possession of a

firearm, the government may not refer to the specific name or nature of the defendant's prior

conviction in its *case-in-chief*.  *Old Chief v. United States*, 519 U.S. 172, 186-87 (1997)

(Emphasis added).  Fed. R. Evid. 609 indicates that *Old Chief*'s protection can recede when a

defendant chooses to testify at trial.  "In that event, it is possible, though not certain, that the

defendant can 'be cross-examined about his prior convictions for the limited purpose of

impeaching his testimony.' "  *United States v. Kemp*, 546 F.3d 759, 763 (6th Cir. 2008) (quoting

*United States v. Perry*, 512 F.2d 805, 806 (6th Cir. 1975)).

The decision to elicit the nature of Petitioner's prior conviction was a strategic decision

on the part of trial counsel to "draw the sting" of the prior conviction from potential

impeachment on cross-examination by admitting it on direct.  *See* Taking the Sting Out:

17

(5:19CV0667)

Using Direct Examination to Anticipate and Undercut Attacks on Your Witness (March 31, 2016)

(https://law.temple.edu/aer/2016/03/31/taking-the-sting-out-using-direct-examination-to-anticipate-and-undercut-attacks-on-your-witness/ (last visited March 9, 2022)).  The Court finds that the decision to elicit the nature of Petitioner's prior conviction was not behavior that fell below an objective standard of reasonableness.  Rather, it is a trial tactic often employed when a defendant testifies.  Petitioner is unable to draw a vector from that age-old strategy to his conviction in the face of such overwhelming evidence.

### b.     Trial Counsel Presented a Viable Defense Theory

Petitioner claims that trial counsel's "so-called" trial strategy was to attempt to question witnesses as to whether someone initiated the investigation by giving police false information, which the Court correctly prevented him from doing.  According to Petitioner, "[i]n short, trial counsel tried to pursue a legally incompetent theory, this Court stopped him, and trial counsel did not assist Mr. Elenniss within the meaning of the Sixth Amendment."  ECF No. 76 at PageID #: 1467.

This argument was already addressed by the Court at Petitioner's Sentencing Hearing. Attorney Yoder had entered an appearance as substitute counsel for Petitioner, and raised numerous issues with the Court, one being the "*Franks* Issue."  *See* Supplement to and Reply in Support of Defendant's Rule 23/33 Motion and Motion for Release (ECF No. 63) at PageID #: 1291.  In response to the argument, the Court stated:

> THE COURT:  One other point I should make.  The ineffective assistance
> of counsel, I am going to speak about *Strickland* in a moment, but in the heading,

18

(5:19CV0667)

you referenced "*Franks* Issue."  And wanting to give due consideration to this, I tried to figure out what you meant by this, so maybe this is an opportunity for me to ask you a question.

As you know, *Franks v. Delaware* comes into concern when there is an affidavit, as there was in support of the motions that -- in support of the warrants that led to the search of Mr. Elenniss's property.

So the question usually put to the court during a *Franks* inquiry is whether or not the defendant can at least preliminarily show that a false statement was knowingly and intentionally made, or made with reckless disregard for the truth and included in the affidavit.

And then the second part of that inquiry is, did that knowingly and intentionally false statement or the one made with reckless disregard create an issue with probable cause, meaning if you took out that statement, would probable cause still exist?  I am not sure what you were referring to when you included in the subtopic "*Franks* Issue."

Do you want to tell me?

MR. YODER:  . . . We find that to be a state action, which would be precluded by the Constitution from being able to do so without a warrant being issued.  That's why we feel that there's a *Franks* issue in violation of that.

THE COURT:  Thank you, sir.

Two points.  One is, that argument was made by Mr. Bensing.  And I know it was because I answered it in writing.  And what I read to you now is docketed in ECF Number 19.  It's my ruling denying Mr. Elenniss's motion to suppress.  And it's at page 134 of that ruling under subtopic heading "Trash Pull." And I won't read all of it to you, but I will try to read into the record enough of it to make it make sense to you; but I'm sure you've had access to it and that you've reviewed this already.

"Defendant first argues that the trash pull was conducted illegally."

I state some law and go on to write, "In this case, the evidence demonstrates that the trash pull was conducted legally. . . ."

                                        *     *     *

So on to *Strickland*, the well-known Supreme Court case that the court relies on when determining whether or not there's been ineffective assistance of counsel.  And there were myriad errors allegedly made by Mr. Bensing. . . .

                                        *     *     *

THE COURT:  . . . So this is where I come down on those questions: Ultimately, I find there wasn't ineffective assistance of trial counsel.  And to the extent there were any choices, strategic or otherwise, made, I don't find that any choices made by trial counsel satisfy the excusable neglect standard, nor does the behavior of current counsel satisfy that standard. . . .

ECF No. 73 at PageID #: 1374-79.

19

(5:19CV0667)

In addition, trial counsel's unsuccessful trial strategy, now viewed with the benefit of hindsight, is not a basis to disturb Petitioner's conviction based on ineffective assistance of counsel.  *See Pough*, 442 F.3d at 966 (warning that courts should "not indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors") (quoting *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996) (*overruled on other grounds* by *In re Abdur' Rahman*, 392 F.3d 174 (6th Cir. 2004) (en banc))); *Buell v. Mitchell*, 274 F.3d 337, 360, (6th Cir. 2001) (judgments made by counsel during the course of his representation of the defendant at trial did not rise to the level of constitutional ineffectiveness).  Petitioner's argument is merely an exercise in hindsight, which is prohibited by the *Strickland* standard.  Although faulting counsel for failing to investigate the facts and develop an appropriate defense strategy, Petitioner presents nothing materially different from those matters actually pursued at trial.

### c.     Trial Counsel Did Not Fail to Object to a Constructive Amendment or Prejudicial Variance

Petitioner claims that trial counsel was ineffective for failing "to object to the government's irrelevant evidence of methamphetamine and codeine, which constructively amended the indictment or produced a prejudicial variance."  ECF No. 76 at PageID #: 1467. Petitioner also claims that by failing to "challenge introduction of the methamphetamine or the codeine," trial counsel allowed the government to "broaden the scope of what could convict Mr. Elenniss on that charge."  ECF No. 76 at PageID #: 1469.  When a defendant properly preserves the issue of a constructive amendment to or variance from an indictment for appellate review, the Court evaluates the claims *de novo*.  *United States v. Kuehne*, 547 F.3d 667, 682 (6th Cir. 2008),

(5:19CV0667)

*cert. denied*, 558 U.S. 928 (2009).  Here, however, Petitioner does not indicate, and a review of

the record fails to disclose, that he raised either contention at the trial level.  They are not,

therefore, properly before the Court.  *See United States v. Prince*, 214 F.3d 740, 756 (6th Cir.

2000).

   "An indictment may be the subject of an actual amendment, a constructive amendment, or

a variance."  *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007).  Thus, constructive

amendments and variances are two types of "modifications to indictments that the Sixth Circuit

has recognized."  *United States v. Hynes*, 467 F.3d 951, 961 (2006).  These two concepts,

however, "differ with respect to the burden placed upon the defendant and the remedy mandated

upon a showing that a constructive amendment or variance has occurred."  *Kuehne*, 547 F.3d at

683.

   **i.**  **Proof that Petitioner manufactured, distributed, and
used narcotics in addition to those specifically identified
in the Indictment (ECF No. 8) did not result in a
constructive amendment.**

   There was no amendment to the Indictment (ECF No. 8).  "A constructive amendment

'results when the terms of an indictment are in effect altered by the presentation of evidence and

jury instructions which so modify essential elements of the offense charged such that there is a

substantial likelihood that the defendant may have been convicted of an offense other than the

one charged in the indictment.' "  *United States v. Mize*, 814 F.3d 401, 409 (6th Cir. 2016)

(quoting *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005)).  "Because of the

constitutional injury that results from a constructive amendment, when proven, a defendant is

(5:19CV0667)

entitled to a reversal of his conviction." *Kuehne*, 547 F.3d at 683 (citing *Martinez*, 430 F.3d at 338).

Petitioner's constructive amendment argument is that the indictment was effectively altered because Count 1 the Indictment (ECF No. 8) charged Elenniss with manufacturing, distributing, or using marijuana, amphetamine salts, Xanax, and Alprazolam, while the evidence at trial showed that Petitioner also manufactured, distributed, and used methamphetamine and codeine. This argument fails because the jury instructions correctly indicated what type of drugs Petitioner was charged with, and required the jury to find the relevant crime with respect to the charged narcotics. *See* Transcript of Jury Trial Proceedings (ECF No. 53) at PageID #: 1009-13. Because the jury instructions did not alter the Indictment (ECF No. 8) with respect to the narcotics charged, Petitioner's constructive amendment argument lacks merit. *See Hynes*, 467 F.3d at 965 ("But *Hynes* cannot establish a constructive amendment because the jury instructions correctly indicate that one – and only one – false statement is alleged in the indictment.").

> ii.  **Proof of the additional narcotics found did not cause a prejudicial variance.**

There also was no fatal variance to the Indictment (ECF No. 8). A variance results "when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *Kuehne*, 547 F.3d at 683 (alteration in original) (quoting *Prince*, 214 F.3d at 756-57). To be fatal, a variance must also affect a substantial right of the defendant. *Id.* "The substantial rights of the defendant 'are affected only when the defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions.' " *Id.*

22

(5:19CV0667)

(quoting *Hynes*, 467 F.3d at 962).  Thus, a defendant may succeed in having his conviction reversed based on a variance only when he also proves prejudice.

Petitioner's claim is only that the Government proved that he committed the substantive crime with more drugs than just those charged; he does not claim that the Government failed to prove that he committed the substantive crime in Count 1 of the Indictment (ECF No. 8), *i.e.*, maintaining a drug-involved premises.  As such, there was no variance, fatal or otherwise.

For the sake of completeness, the Court finds that even if there had been a variance, Petitioner has not shown that he was prejudiced by it.  His defense at trial focused on the credibility of the Government witnesses and whether the Government had proved beyond a reasonable doubt that the narcotics found on the premises belonged to Petitioner.  The defense was not premised on any of the specific narcotics charged in Count 1 of the Indictment (ECF No. 8).  Under these circumstances, any alleged variance regarding what type of drugs were involved in the substantive count was not prejudicial.

*See United States v. Robison*, 904 F.2d 365, 369 (6th Cir. 1990) (finding no prejudice resulting from variance that occurred when government charged defendant with using a pistol and evidence proved that he instead used a shotgun, because "his defense of being a drug user, not a drug dealer, is not substantially affected by the particular type of firearm with which he was convicted of having an involvement").  An additional reason to conclude that any alleged variance did not prejudice Petitioner is his failure to show that the alleged variance somehow surprised him at trial. *Hynes*, 467 F.3d at 965.

(5:19CV0667)

Petitioner's argument regarding prejudice is that evidence was introduced at trial of his possession of methamphetamine and codeine, and that with this "irrelevant and prejudicial methamphetamine evidence, the jury could have concluded that Mr. Elenniss tried to grow his own marijuana for purposes secondary to his residence simply to save the money of purchasing it." ECF No. 76 at PageID #: 1469.  However, this evidence did not broaden the scope of what could convict Petitioner on Count 1 as Elinniss claims, as it does not change the requirement that the premises was a drug-involved premises, based on the marijuana Petitioner admitted to growing inside of it.  *See* ECF No. 52 at PageID #: 917) (**Q.**  "Let's go back to the marijuana for just briefly.  You acknowledge that you grew marijuana and you smoke marijuana?"  **A.** "Correct.")  As such, Petitioner's complaint regarding relevance and possible juror conclusions is more appropriately an evidentiary objection, which he did not make at trial.

### III.  Conclusion

Elenniss is unable to establish that his trial counsel was ineffective or that he suffered prejudice as a result of the performance of counsel.  Accordingly, the Court finds that Petitioner fails to demonstrate any ground on which he is entitled to relief under § 2255.  Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 78) is denied.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of

(5:19CV0667)

appealability.  28 U.S.C. §2253(c);  Fed. R. App. P. 22(b).


       IT IS SO ORDERED.


   __March 14, 2022___            ___/s/ Benita Y. Pearson_____
Date                                 Benita Y. Pearson
                                   United States District Judge